10-5008-cv
*Friedman v. New York City Administration for Children's Services, et al.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 6th day of November, two thousand twelve.

PRESENT:

> JOSÉ A. CABRANES,
> DENNY CHIN,
> SUSAN L. CARNEY,
> *Circuit Judges.*

─────────────────────────────────

 STEVEN FRIEDMAN,

> *Plaintiff-Appellant,*

> v.                                                        No. 10-5008-cv

NEW YORK CITY ADMINISTRATION FOR CHILDREN'S SERVICES, SONIA RICKETTS-HUBBARD, MARCO CARDENAS, DANIEL COHEN, BARNEY MASNICK,

> *Defendants-Appellees,*

SAINT VINCENT'S CATHOLIC MEDICAL CENTERS, JENNIFER MASNICK, HELENE FRIEDMAN, ZILMA CONSTANZA, PATRICE MCFARLAN-WOODEN,

> *Defendants.*

─────────────────────────────────

1

**FOR PLAINTIFF-APPELLANT:**  PHILIP BYLER (Andrew T. Miltenberg, *on the brief*), Nesenoff & Miltenberg, LLP, New York, NY.

**FOR DEFENDANTS-APPELLEES:**  ELLEN RAVITCH (Stephen J. McGrath & Kimberly Conway, *on the brief*), *on behalf of* Michael A. Cardozo, Corporation Counsel of the City of New York, *for New York City Administration for Children's Services, Sonia Ricketts-Hubbard and Marco Cardenas.*

DONALD S. NEUMANN, JR., Montfort, Healy, McGuire & Salley, Garden City, NY, *for Barney Masnick.*

DANIEL COHEN, *pro se*, New York, NY.

Appeal from a November 10, 2010 judgment of the United States District Court for the Eastern District of New York (Frederic Block, *Judge*).

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment is **AFFIRMED**.

Plaintiff-Appellant Steven Friedman appeals a November 10, 2010 judgment entered by the District Court after a jury trial. On appeal, he argues that the District Court erred by granting summary judgment in favor of various defendants and by failing to properly instruct the jury. We assume the parties' familiarity with the facts and prior proceedings, which we reference only briefly.

## BACKGROUND

### A. Facts

On July 24, 2003, the New York City Administration for Children's Services ("ACS") received a report made by Dr. Daniel Cohen, a psychiatrist at St. Vincent's Catholic Medical Center. In the report, Dr. Cohen indicated that Steven Friedman was putting Friedman's children in the middle of his custody battle by telling his children that (1) "he will kill them if they do not lie and say that mommy beats me and that you want to live with me," and (2) "mommy's bad, she doesn't love you and she is having affairs." Dr. Cohen also reported that these statements were causing the children to experience emotional effects, such as crying and shaking.

That same day, Marco Cardenas, an ACS caseworker, interviewed Helene Friedman, the children's mother, and the two oldest children, Jacob and Rachel. Mrs. Friedman stated that the

allegations in the report were true and that the children had come home crying after visiting their father. When Cardenas interviewed Jacob, he asked whether Jacob's father threatened to kill him if Jacob did not say that his mother hit him. Jacob responded, "only sometimes." Rachel said that "her daddy tells her to say mommy hits her but not to tell mommy" and that "her daddy told her 'if you don't say that mommy hits you harder than an animal, I'll kill you.'"

The next day, Cardenas interviewed Dr. Cohen. Dr. Cohen stated that he was a family friend and that Mrs. Friedman asked him to speak with the children. He told Cardenas that he met with the children and that during his meeting with the children, they "cried to the point where they [we]re shaking." He also stated that Jacob and Rachel told him that their father "makes them lie and say things about their mother" including "that she mistreats them and hits them." While Dr. Cohen stated that he was a family friend, he did not disclose during the interview that he was romantically involved with Mrs. Friedman's sister, Jennifer Masnick.

Cardenas then interviewed Steven Friedman, who denied the allegations in the report. After Cardenas informed Mr. Friedman that he already had interviewed the children, Cardenas noted that Mr. Friedman's "demeanor change[d]" and he "appeared extremely nervous, his hands were shaking, and he began to sweat profusely." Mr. Friedman then stated that "Jacob is a very intelligent boy" but that "Rachel sides more with her mother and she is easily influenced by his wife who tells her what to say." Mr. Friedman also provided Cardenas with a list of collateral contacts, including neighbors of Mrs. Friedman, whom he wanted Cardenas to contact and interview. Cardenas stated that he would not contact anyone who would "bad mouth" Mrs. Friedman—especially neighbors—for privacy reasons. At the end of the interview, Mr. Friedman said that he was thinking of calling in a report on the children's maternal grandfather—Barney Masnick—because his children told him that Masnick was taking showers with them.

On July 29, 2003, Cardenas interviewed the Friedmans again because ACS received an anonymous report of inappropriate behavior by Barney Masnick. Mrs. Friedman denied the allegations and stated that identical allegations had been the subject of a prior report that was determined to be unfounded. She also told Cardenas that the children had come home from the weekend with their father "terrified and crying" because he took them to a police station and tried to get them to tell police that their grandfather was showering with them. Mr. Friedman stated to Cardenas that he did not make the report about Barney Masnick despite his prior statements to Cardenas. Mr. Friedman admitted taking the children to the police station, explaining that he did so because Jacob allegedly told him that Masnick went to the bathroom in front of Jacob.

In early September 2003, Cardenas interviewed some collateral sources. For example, on September 4, 2003, he contacted a detective from the Nassau County Police Department (where Mr.

3

Friedman had taken his children and made the report about Barney Masnick).[1] The detective expressed his view that Mr. Friedman was attempting to bolster his case against Mrs. Friedman to gain custody of the children. That same day, Cardenas also received a letter from a social worker who had been counseling Mrs. Friedman and her children. In the letter, the social worker stated that the children appeared to have difficulty when they returned from visits with Mr. Friedman.

Based on his interviews, Cardenas concluded that Mr. Friedman was coaching his children to make false statements about Mrs. Friedman in an effort to obtain custody and that these actions were causing emotional harm to the children. Cardenas's supervisor, Sonia Ricketts-Hubbard, reviewed his investigation records and report. After her review, Ricketts-Hubbard instructed Cardenas to file neglect petitions against Mr. Friedman.

## B. Procedural History

Cardenas filed the neglect petition against Mr. Friedman in the New York Family Court for Queens County on September 22, 2003. Two days later, the neglect proceeding was removed to the New York State Supreme Court, Queens County, and consolidated with the pending matrimonial action between the Friedmans. On April 19, 2004, after a fact-finding hearing, the court found that ACS failed to show that the children had suffered or were at imminent risk of suffering emotional impairment. In particular, the court noted that "[t]he only testimony offered of the children's alleged suffering is the statement contained in the petition that is a direct quote from Dr. Cohen," and it discounted Dr. Cohen's statement because of his romantic involvement with Mrs. Friedman's sister and because his opinion was not based on a professional diagnosis.

Mr. Friedman then filed this suit on July 21, 2004. At various times in 2007, ACS, Cardenas, Ricketts-Hubbard, Dr. Cohen, and Masnick filed summary judgment motions to dismiss the claims against them. On December 6, 2007, the District Court heard argument and, at the close of that hearing, orally granted the motions filed by ACS, Cardenas, and Ricketts-Hubbard but denied Dr. Cohen's motion. On January 2, 2008, the District Court granted Masnick's motion for summary judgment. After several motions for reconsideration, the District Court ultimately granted summary judgment in favor of Dr. Cohen, but it reconsidered and subsequently denied Cardenas's summary judgment motion.

The case then proceeded to trial against Cardenas and others, including Mrs. Friedman.[2] The jury trial began on October 26, 2010. On November 9, 2010, the jury returned a verdict in

---

[1] After his investigation, the detective concluded that Mr. Friedman's allegations against Barney Masnick were not substantiated and closed the case.

[2] On February 5, 2010, the case was reassigned from Judge Edward R. Korman to Judge Frederic Block.

4

favor of the remaining defendants, including Cardenas and Mrs. Friedman. The District Court issued its judgment on November 10, 2010. This appeal followed.

## DISCUSSION

### A. Summary Judgment Motions

An order granting summary judgment is reviewed *de novo*, and all factual inferences are drawn in favor of the non-moving party. *See, e.g.*, *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 107 (2d Cir. 2008). This Court generally reviews rulings on motions for reconsideration for abuse of discretion. *See Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 125 (2d Cir. 2011). However, where a district court "considered the merits of [an] argument in the first instance on [a] motion to reconsider," this Court has reviewed the issue *de novo*, rather than for abuse of discretion. *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 739 n.21 (2d Cir. 2010).

### 1. ACS[3]

Before a municipal entity may be found liable under § 1983, a plaintiff must show that the municipality is "actually responsible" for his injuries, as through a "policy or custom." *See, e.g.*, *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). Mr. Friedman argues that ACS's failure to supervise Cardenas was so flagrant that it constituted a policy of acquiescence in allegedly unconstitutional behavior. The record, however, does not support Mr. Friedman's argument or suggest that his alleged injuries were caused by a policy or custom of ACS.

### 2. Ricketts-Hubbard

Similarly, under § 1983, "supervisor liability . . . depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citation omitted). "Absent some personal involvement by [the supervisor] in the allegedly unlawful conduct of h[er] subordinates, [s]he cannot be held liable under section 1983." *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) (citations omitted). A child abuse investigation passes constitutional muster provided the case worker had a reasonable basis for his findings of abuse. *See Southerland v. City of N.Y.*, 680 F.3d 127, 152 (2d Cir. 2012). Even assuming Ricketts-Hubbard was personally involved here, there was a reasonable basis for the filing of the neglect petition as shown in the ACS record. Even assuming there were deficiencies in the investigation, an imperfect investigation, without more, does not give rise to a constitutional violation. *See Wilkinson v. Russell*, 182 F.3d 89, 106 (2d Cir. 1999).

---

[3] Even though Mr. Friedman brought claims against ACS, City agencies are not suable entities, and thus, the proper defendant is the City of New York. We refer to ACS instead of the City of New York for convenience.

### 3. Dr. Cohen

On appeal, Mr. Friedman argues that the District Court erred by granting summary judgment in favor of Dr. Cohen. We disagree because the record supports the District Court's conclusion that Dr. Cohen had a reasonable basis for making the report. Joint App'x 718-21; *cf. Southerland*, 680 F.3d at 151-53.

### 4. Barney Masnick

Finally, Mr. Friedman's § 1983 claims against Barney Masnick are insufficient because Masnick did not act "under color of law." While private parties can be said to have "acted under color of law" for the purposes of § 1983 if they acted jointly with state officials to deprive a plaintiff of a constitutional right, *see, e.g.*, *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980), nothing in the record suggests that Barney Masnick's actions rose to that level.

For these reasons, we affirm the District Court's grants of summary judgment in favor of ACS, Ricketts-Hubbard, Dr. Cohen, and Masnick.

### B. The Resolution of the Neglect Petition

Mr. Friedman also asserts that the District Court erred by not taking judicial notice of or properly instructing the jury about the prior dismissal of the neglect petition by the New York State Supreme Court.[4] He principally argues that because the neglect petition was dismissed in his favor, "it was collateral estoppel [on the issue] that the charges [against him] were not justified." Plaintiff's Brief, at 49. We disagree.

Issue preclusion applies only if: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was 'actually litigated and actually decided,' (3) there was 'a full and fair opportunity for litigation in the prior proceeding,' and (4) the issues previously litigated were 'necessary to support a valid and final judgment on the merits.'" *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)).

The issues decided by the New York State Supreme Court and the issues before the jury in this case were not sufficiently similar for the purposes of issue preclusion. The issue in the Neglect Proceeding was whether the children's "physical, mental or emotional condition ha[d] been impaired or [wa]s in imminent danger of becoming impaired as a result of the failure of [their] parent . . . ." N.Y. FAM. CT. ACT § 1012(f)(i) (McKinney 2010). The issue before the jury in this case was whether

---

[4] The District Court instructed the jury that the second prong of the malicious prosecution claim against Mrs. Friedman had been established because the neglect petition had been terminated in plaintiff's favor on the merits. Joint App'x 3347. It cautioned the jury, however, not to speculate as to what happened or who testified during that proceeding. *Id.*

Mr. Friedman proved by a preponderance of the evidence that his constitutional rights were violated.

## CONCLUSION

We have considered all of Steven Friedman's remaining arguments on appeal and find them to be without merit. For the reasons stated above, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk